IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

JAMES M. McCOY,

        Plaintiff,

V.                                              CIVIL ACTION NO. 3:06-0207

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

**<u>MEMORANDUM ORDER</u>**

In this action, filed under the provisions of 42 U.S.C. §§405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff protectively filed his applications on October 22, 2001, alleging disability commencing August 31, 1998,[1] as a consequence of problems in his knees and back, depression,

---

[1] Plaintiff previously filed an application for disability insurance benefits on August 13, 1996, which was denied initially and no appeal was taken He filed a second application for disability insurance benefits on October 12, 1999, which was appealed to the district court level in another jurisdiction. The administrative law judge in this case determined there was no basis to reopen either of these applications. Therefore, while plaintiff alleges an onset date of August 31, 1998, for purposes of the present case, his onset date was considered as September 1, 2001, the day after the Commissioner's decision on his October 1999 application. Plaintiff's insured status expired March 31, 2002, and, for purposes of his application for disability insurance benefits, it was incumbent upon him to establish disability on or before that date. <u>Harrah</u> v.

hearing loss, "COPD," chronic bronchitis and asthma. On appeal from initial and reconsidered denials, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was thirty-nine years of age and had obtained a high school education and vocational training in telecommunications. His past relevant employment experience consisted of work as a telecommunications technician and cook. In his decision, the administrative law judge determined that plaintiff suffers from "shortness of breath; back pain; and history of alcohol abuse/depression," impairments he found severe. Though concluding that plaintiff was unable to perform his past work,[2] the administrative law judge determined that he had the residual functional capacity for a significant range of medium level work. On the basis of this finding, and relying on Rule 203.29 of the medical-vocational guidelines[3] and the testimony of a vocational expert, he found plaintiff not disabled.

Review of the record reveals deficiencies which will require remand for further proceedings. The reports about plaintiff's medical care, dating from at least 1996, reveal a history of treatment for back pain with MRI results consistent with "mild" disc disease at the L4-5 and L5-S1 levels; breathing problems diagnosed as chronic obstructive pulmonary disease with an asthmatic

---

Richardson, 446 F.2d 1, 2 (4th Cir. 1971).

[2] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[3] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 3.

component for which he is prescribed inhalers;[4] pancreatitis; alcohol abuse; suicide attempts; and, depression and anxiety.

As noted, the administrative law judge determined that back pain, shortness of breath, depression and alcohol abuse were "severe" impairments. With respect to his alcohol abuse, the record reveals a number of hospitalizations for suicide attempts where alcohol was a factor as well as for injuries occurring while intoxicated. Most of these occurred prior to September 1, 2001; however, plaintiff was hospitalized in February 2002 after taking an overdose of his antidepressant medication and ingesting alcohol. He reported being homeless at that time, was separated from his wife, had no money and had become desperate and acted impulsively. He was also admitted to the withdrawal unit at Pathways Treatment Center on October 11, 2002. Plaintiff reported he had been homeless and living on the streets for over six months. It is not clear how long he remained in the withdrawal unit. Plaintiff was also noted to be intoxicated during emergency room visits on October 5, 2002, when he was seen for left hand numbness after being involved in a fight, and on November 2, 2002, when he complained of back pain stating he had hurt his back while walking. Because of plaintiff's significant history of alcohol abuse it was necessary to determine the effect of this condition on his ability to work as well as the severity of his other impairments, particularly depression and possibly anxiety.[5]

At the administrative law judge's request, Stuart Gitlow, M.D., reviewed the evidence and expressed opinions as to plaintiff's mental impairments and mental residual functional capacity

---

[4] Plaintiff has been a heavy smoker though he indicated at the hearing that he had significantly decreased his consumption and was trying to quit.

[5] See 42 U.S.C. §423(d)(2)(C), 20 C.F.R. §§404.1535, 416.935.

in a letter dated May 26, 2003. He concluded that there was "no period since 9/1/01 in which any length of sobriety can be clearly established" and also that "[t]here is no evidence within the past two years of ongoing psychiatric symptoms sufficient for any diagnosis other than alcohol dependence." Despite concluding that plaintiff's alcohol use had been significant and ongoing for a long period of time, Dr. Gitlow still found plaintiff would have a "good" ability (more than satisfactory) in all areas of work-related functioning except ability to use judgment which he rated as "fair" (limited but satisfactory).

At the October 9, 2003 hearing, plaintiff testified that he had been abstinent from alcohol for the prior six months, and there is no evidence of emergency room visits, hospital admissions or other treatment related to alcohol abuse which would contradict this statement. In fact, it appears that other than an emergency room visit on May 8, 2003, for complaints of chest pain, plaintiff received little or no treatment during 2003.

While plaintiff was apparently experiencing a period of sobriety, his testimony toward the end of the hearing sounded delusional in that he stated he was being followed by the "NSA" and the Secret Service who also had his apartment bugged. According to plaintiff they are trying to make sure he does not divulge any of the secrets to which he was privy when he was in the military.[6] Plaintiff claimed he had "top secret clearance" and had also been a Navy SEAL. This testimony clearly was not consistent with reality and was a primary reason plaintiff was sent for a post-hearing psychological exam.

---

[6] Plaintiff claimed he had served in the Army, Navy and Marines, but the Government would not recognize him as a veteran because his military records were destroyed in a fire.

During this exam, conducted on December 30, 2003, by Brian Bailey, M.A., plaintiff was cooperative but noted to have a cast on his right arm which limited his participation in the exam, especially with the performance aspects of I.Q. testing.  Plaintiff's grooming and hygiene were poor with body odor evident, according to Mr. Bailey.  Plaintiff again reported having served in the Army, Navy and Marines, was a Navy SEAL and had been involved with military intelligence.  He stated he had met Saddam Hussein and, in fact, had been abducted by the "National Intelligence Agency" around Thanksgiving of that year (2003) and taken to Kuwait so that he could "identify" Saddam Hussein.  Despite these unbelievable reports, Mr. Bailey concluded there were "no signs of delusional thinking, obsessions or phobias."  Attached to the report was an assessment in which Mr. Bailey opined plaintiff had a "poor" ability (seriously limited but not precluded) only in the areas of functioning independently, understanding, remembering and carrying out complex job instructions and maintaining personal appearance.

The administrative law judge ultimately adopted only the limitation on using judgment from Dr. Gitlow.  As noted, this physician's assessment of mental residual functional capacity appears to be inconsistent with his conclusions about the significance of plaintiff's alcohol abuse.  It is also observed that his original report and an update from July 2003 were both completed months before the hearing and the consultative psychological exam.  These factors significantly diminish the credibility of Dr. Gitlow's opinion.

Additionally, the administrative law judge did not resolve the conflict between his own assessment of mental residual functional capacity and that from Mr. Bailey which, though inconsistent with the psychologist's exam observations, at least appears to be somewhat more realistic.  There is also an inconsistency noted in the administrative law judge's decision itself as he

made no additional reductions in plaintiff's mental residual functional capacity to account for his findings that plaintiff had moderate limitation on daily living activities and social functioning, findings he made when assessing whether plaintiff met or equaled a listing.

Though recognizing that resolution of conflicts in the evidence is a function of the Commissioner, not the courts, Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964), nevertheless, before this Court can conduct a reasoned review of his decision, the Commissioner must "explicitly indicate 'the weight given to all relevant evidence,'" articulating "the reasons underlying his actions... ." Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987). Here, the conclusions from the medical expert and consultative examiner do not make sense in light of the evidence and of their observations, and the administrative law judge has failed to even detect these conflicts much less resolve them.

Additionally, the administrative law judge's findings regarding plaintiff's alcohol abuse are vague and confusing and may not be consistent with the Commissioner's regulations. The administrative law judge concluded several times in his decision that plaintiff's alcohol abuse was "significant," and when assessing credibility he found that plaintiff's allegations of disabling musculoskeletal impairments, shortness of breath and a mental impairment, "with the exception of alcohol abuse," were not fully credible. In determining work-related limitations, the administrative law judge concluded "the claimant's alcohol abuse is significant and would impede his ability to perform work activity on a sustained basis." Oddly, however, the only mental limitation he found was a "fair" ability to use judgment, as noted.

When discussing the vocational expert testimony at both hearings,[7] the administrative law judge noted that this witness had expressed the opinion that if plaintiff's testimony were fully credible, there would be no work he could perform. The administrative law judge then concluded "[h]owever I find the claimant's alcohol abuse is significant and would impact on his ability to hold down a full-time job," adding that, "[a]ccordingly, in the absence of such use, plaintiff's reported inability to perform work activity is not credible."

It is not clear here whether the administrative law judge found that plaintiff's alcohol abuse was just another impairment which would result in the mental limitations he assessed or whether he is, in a vague manner, finding that this condition causes plaintiff to be disabled but, absent this impairment, he would have the residual functional capacity contained in his findings.[8] Clearly, if he were attempting to find the latter, his analysis does not comport with the requirements of 20 C.F.R. §§404.1535, 416.935 which specify how to determine whether drug or alcohol use is a "contributing factor material to the determination of disability." In either case, the Court finds that remand is necessary for new findings on this issue which address it in a direct and understandable manner. Plaintiff's mental residual functional capacity also needs to be assessed in light of all the evidence. The parties should also be given the opportunity to submit additional relevant evidence

---

[7] A second hearing was convened on July 8, 2004, primarily for the purpose of taking additional testimony from the vocational expert. Plaintiff was not present at this hearing and his attorney stated he had been unable to get in touch with him. Counsel did point out to the administrative law judge, however, the inconsistency between Mr. Bailey's exam findings and assessment of mental residual functional capacity. As noted, the administrative law judge did not discuss this inconsistency in his decision.

[8] In the previous decision, dated August 31, 2001, a different administrative law judge found plaintiff's alcoholism was a "contributing factor material" to his finding that plaintiff was disabled.

On the basis of the foregoing, it is **ORDERED** that this case be remanded to the Commissioner for further proceedings consistent with this Memorandum Order. All matters in this case being concluded, it is **ORDERED** dismissed and retired from the Court's docket.

The Clerk is directed to transmit a copy of this Memorandum Order to all counsel of record.

ENTER: July 28, 2008

*/s/ Maurice G. Taylor, Jr.*
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE